[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the plaintiff, a member of the Connecticut Bar, appeals pursuant to Practice Book § 2-38, from a decision of the Statewide Grievance Committee, reprimanding him for a violation of Rule 1.3 of the Rules of Professional Conduct. CT Page 2357
As a threshold principle of law it must be noted that:
 "[a]n attorney is admitted to the practice of law on the implied condition that the continuation of this right depends on remaining a fit and safe person to exercise it. The Rules of Professional Conduct bind attorneys to uphold the law and to act in accordance with high standards in both their personal and professional lives. See Preamble to Rules of Professional Conduct. As officers and commissioners of the court, attorneys are in a special relationship with the judiciary and are subject to the court's discipline. It is well established that judges of the Superior Court possess the inherent authority to regulate attorney conduct and to discipline the members of the bar." (Internal quotation marks and citations omitted.)
Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445, 450-51 (2001).
The Uniform Administrative Procedure Act (UAPA), § 4-166, et seq., does not apply to the Grievance Committee, but the same principles as to the scope of judicial review are applicable. Pinsky v. StatewideGrievance Committee, 216 Conn. 228, 234-35, 578 A.2d 1075 (1990). The role of the court "is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks and citations omitted.) Weiss v.Statewide Grievance Committee, 227 Conn. 802, 812, 633 A.2d 282 (1993). "The burden is on the . . . committee to establish the occurrence of an ethics violation by clear and convincing proof." Id., 812, 633 A.2d 282. Allegations of attorney misconduct must be proven by clear and convincing evidence, regardless of the nature of the sanctions ultimately imposed.Statewide Grievance Committee v. Presnick, 215 Conn. 162, 171-72,575 A.2d 210 (1990). Rule 1.3 of the Rules of Professional Conduct imposes a "Diligence" obligation on lawyers: "A lawyer shall act with reasonable diligence and promptness in representing a client." See generally Statewide Grievance Committee v. Friedland, 222 Conn. 131,609 A.2d 645 (1992).
On November 18, 1998, a former client of the plaintiffs, Alice M. Jain, filed a complaint against the plaintiff alleging his failure to diligently represent her in her marriage dissolution action. This dissolution matter was brought in the Superior Court, judicial district of New Haven. Briefly stated, Jain alleged that the plaintiff did not CT Page 2358 exercise reasonable diligence in pursuing pendente lite orders for alimony and child support. (Return of Record, (ROR), Item # 1.)
The record reveals that a reviewing committee of the Statewide Grievance Committee conducted an evidentiary hearing on August 10, 1999 and November 9, 1999. At these hearings several witnesses testified and numerous exhibits were received into evidence. The witnesses included, among others, both Jain and the plaintiff. The reviewing committee issued a written decision in which it found that the plaintiff had failed to exercise reasonable diligence in pursuing pendente lite financial orders in violation of Rule 1.3 of the Rules of Professional Conduct. The sanction imposed was a reprimand. (ROR, Item #23.) The Statewide Grievance Committee affirmed the decision of the reviewing committee. (ROR, Item #26.)
Briefly stated, the reviewing committee in its February 10, 2000 decision found proven by clear and convincing evidence that the plaintiff had been retained to represent Jain in a dissolution of marriage action in September, 1997. Jain, along with her two children, had moved out of the marital home and had relocated to the basement of her parents' home. Jain was pregnant with her third child and not working. The committee found that Jain's financial situation was dire, while her husband, a physician, had an income of approximately $300,000 per year.
The plaintiff participated in discussions with her husband's attorney, Shirley Hoogstra, in an attempt to reach an agreement regarding temporary financial orders. These discussions were not successful. The plaintiff filed pendente lite motions with the court in October, 1997 to obtain temporary child support and alimony payments for his client. These motions appeared on the court calendar on eleven occasions on diverse dates between November, 1997 and May, 1998. On each occasion the motions were postponed and reclaimed. In June 1998, Jain retained another attorney and terminated the services of the plaintiff. Thereafter, in August 1998, the entire matter was resolved by agreement, including financial orders acceptable to Jain.
The majority of the members of the reviewing committee stated in part that:
 We, . . . conclude that there is clear and convincing evidence that the Respondent violated Rule 1.3 of the Rules of Professional Conduct. Nearly seven months elapsed between the filing of the motions and the Respondent's termination yet no temporary financial arrangements were agreed to by the parties or ordered by the court. In fact, the CT Page 2359 motions were never heard by the court, which is unacceptable to us, in light of the dire circumstances in which the Complainant and her children found themselves. While we acknowledge the necessity of adverse attorneys accommodating each other's schedule, we conclude that the Respondent unreasonably failed to have these motions addressed by the court during the time he represented the Complainant, in violation of Rule 1.3 of the Rules of Professional Conduct. Accordingly, the Respondent is reprimanded."
(ROR, Item #23.)
On appeal the parties filed briefs with the court and extensive oral arguments were presented.
The plaintiff contends that the allegations were not proven by clear and convincing evidence and that the decision is arbitrary and capricious. More specifically, he asserts that: "[t]he undisputed facts are that: (1) Plaintiff timely filed the appropriate temporary support motions on his client's behalf; (2) despite good faith negotiations, the parties to the dissolution proceedings were unable to reach an agreement on those support requests; and (3) despite requests by plaintiff on successive occasions, the court would not specially schedule a hearing on the pending pre-trial motions, nor, when the motions appeared on the regular short calendar, would the court proceed in the absence of opposing counsel." (Plaintiff's Brief, p. 3.)
Plaintiff's evidentiary argument is governed by the substantial evidence rule. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency s findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks and citations omitted.) Dolgner v. Alander, 237 Conn. 272, 280, 676 A.2d 865
(1996).
"The substantial evidence rule governs judicial review of administrative factfinding under the UAPA. General Statutes § 4-183
(j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a CT Page 2360 decision of an administrative agency . ., and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Internal quotation marks and citations omitted; footnote omitted.) Dolgner v. Alander, supra,237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Internal quotation marks and citations omitted.) Id.
A review of the administrative record reveals evidence that Jain removed herself and the two minor children from the marital home in August, 1997. Jain was pregnant with her third child at the time. She had made allegations of spousal abuse. Jain took few personal belongings with her. Jain and her children took residence in a basement room of her parents' house. She was unemployed. The value of the marital home was approximately $450,000. Jain's husband was employed as a physician with a yearly income of several hundred thousand dollars. The plaintiff was aware of Jain's financial situation and living arrangements.
Jain initially retained an attorney other than the plaintiff. This attorney began the dissolution action. The case had a return date in early September, 1997. The plaintiff entered his appearance in mid-September, 1997. Jain informed the plaintiff that she wanted pendente lite financial orders for alimony and child support. In the months that followed, Jain consistently made it clear that she wanted a court order for finances. (ROR, p. 232.) The plaintiff initiated discussions with Attorney Hoogstra in an effort to negotiate financial orders. These negotiations were not successful. The motions were filed with the court in October, 1997 and first appeared on the court calendar on November 10, 1997. They were subsequently marked off because of the unavailability of Mr. Jain. Thereafter, the motions appeared on the court calendar on approximately ten other occasions on diverse dates between November, 1997 and May, 1998. On some occasions the plaintiff wrote letters to other counsel indicating that he intended to go forward. However, on each occasion that the plaintiff reclaimed the motions, and they appeared on the docket, the motions were not argued to the court and no pendente lite financial orders were entered. The court has carefully reviewed the record in order to ascertain how this could occur. An examination of the evidence presented concerning the circumstances surrounding the eleven occasions in which the matters appeared on the court calendar reveal that a majority were marked off at the request of Attorney Hoogstra. The justification cited by Attorney Hoogstra for the postponements included court scheduling conflicts and vacation plans. On two of these occasions, the plaintiff was also unavailable. Attorney Hoogstra was assisted in her representation of Mr. Jain by Attorney Philip Escoriaza. CT Page 2361 Attorney Escoriaza was not required to proceed on these court dates in the absence of Attorney Hoogstra.[1] There was no evidence presented that a judge informed the parties that the court would not proceed in the absence of Attorney Hoogstra.
On the second court date, November 24, 1997, the motions were not addressed because of a heavy court docket. The plaintiff contends that the court's repeated inability to address the motions explain in part why the proposed financial orders were not addressed. On this point, however, the record discloses evidence that on the short calendar date of January 12, 1998 the attorneys and parties were to meet with a family relations officer to discuss the contested issues. The case was not reached during the court's morning session. The attorneys utilized the time to discuss the matter. At approximately 1:00 p.m. the plaintiff and opposing counsel left the courthouse without bringing the matter before the court. The plaintiff reclaimed the pendente lite motions. On January 26, 1998, the parties met with a family relations officer to discuss the contested issues including financial orders. This meeting resulted in several draft proposals to address these issues. The proposals were rejected by Ms. Jain. When the matter was not resolved, the court, Stevens, J., instructed the parties to report back to court on the following Monday, February 2, 1998 at 9:30 a.m. (ROR, p. 268.)
Once again, however, the motions did not go forward at the designated date and time because Attorney Hoogstra had a mediation proceeding in Middletown. The plaintiff did not pursue this matter by advocating that the court proceed in the absence of Attorney Hoogstra with or without her associate counsel, Attorney Escoriaza.
On February 17, 1998, the motions appeared on the short calendar docket. Consistent with past practice, the case did not go forward due to the unavailability of Attorney Hoogstra. The attorney had another case which occupied her time within the courthouse. At this point in time approximately four months had elapsed from the filing of the motions in October, 1997. The plaintiff wrote a letter to the clerk of the court requesting that the motions be scheduled for March 5 and 6, 1998. (ROR, pp. 269-70.) In this letter the plaintiff states in part: "Judge Stevens told us that he could not schedule our motions unless it was on a Monday or Tuesday and referred us to you. You told us essentially the same thing, deferring to the authority of Judge Munro." (ROR, Id.) In what appears to be a response to the plaintiffs letter, the court conducted a judicial pretrial on March 3, 1998. This intervention was not successful in resolving the case. The motions next appeared on the short calendar docket on March 9, 1998 but were marked off because of the unavailability of both the plaintiff and Attorney Hoogstra. CT Page 2362
Additionally, the plaintiff indicated that on several other occasions when the motions appeared on the short calendar docket, they were marked off for tactical reasons. On April 16, 1998, the motions were not addressed by the court because, in addition to the plaintiffs unavailability, he felt that the date was too close to the impending birth of Jain's third child.
On May 5, 1998, a court ordered status conference was held. The contested issues were discussed, but no agreement was reached. Accordingly, the case was scheduled for trial in September, 1998.
In June, 1998, the plaintiff was discharged by Jain and new counsel retained. Prior to the date of trial, the case settled. At no time were pendente lite financial orders entered by the court.
During the period of the time in question, Mr. Jain, without court orders, paid Ms. Jain $300 per week. He also provided financial assistance for the children's school and day care expenses. In addition, for a portion of the relevant time periods, a credit card was provided for Ms. Jain's use. Various other expenses were also covered by Mr. Jain.
Ms. Jain testified that this compensation was insufficient to address her family's needs. She indicated that at a point in time she sought public assistance.
The plaintiff was paid a retainer of approximately $5,500 at the commencement of his legal services. Thereafter, on or about February 9, 1998, he received an additional sum of $25,000. These additional monies resulted from a negotiated agreement with Attorney Hoogstra and Mr. Jain. Pursuant to the arrangement, the two attorneys split the proceeds of a financial bonus received by Mr. Jain from his medical practice.
The plaintiff testified that he devoted between four to six hours per week on the case. Both Attorneys Escoriaza and Levy testified that in their opinions the plaintiff exercised due diligence in his representation of Jain.
The role of the court upon appeal is very limited. "[T]he court shall not substitute its judgment for that of the statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Practice Book § 2-38(f). CT Page 2363
The court finds that the record contains substantial evidence which the review committee chose to credit to support its findings. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken."Hospital of St. Raphael v. Commission on Hospitals Health Care,182 Conn. 314, 318, 438 A.2d 103 (1980). It was not unreasonable for the review committee to conclude, based upon the evidence presented, that the plaintiffs failure to obtain pendente lite financial orders under all the circumstances presented, including her financial situation, established a lack of diligence in contravention of Rule 1.3 of the Rules of Professional Conduct.
The decision is affirmed and the appeal is dismissed.
PETER EMMETT WIESE, JUDGE.